**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| BETTY H.,[1] | : | Case No. 3:21-cv-210 |
| | : | |
| Plaintiff, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS**[2]

Plaintiff Betty H. brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #5).

## I. Background

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on June 12, 2015, alleging disability due to fibromyalgia, acid reflux, depression, high blood pressure and thyroid problems. After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Gregory G. Kenyon. The ALJ concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. (Doc. #5, *PageID* #s 28-51). After the Appeals Council denied review, Plaintiff filed a previous case in the United States District Court for the Southern District of Ohio, and this Court remanded the case to the Commissioner. *See Betty H. v. Comm'r of Soc. Sec.*, No. 3:18-cv-390 (S.D. Ohio Mar. 10, 2020); (Doc. #5, *PageID* #s 896-909). Upon remand, ALJ Gregory G. Kenyon held a second hearing via telephone and issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since June 12, 2015, the application date.

Step 2: Plaintiff has the following severe impairments: fibromyalgia, mild cervical and lumbar degenerative disc disease, bursitis of the right shoulder, chronic obstructive pulmonary disease (COPD), depression, anxiety disorder, and posttraumatic stress disorder (PTSD).

Step 3: Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … subject to the following limitations:

(1) occasionally crouching, crawling, kneeling, stooping, balancing, and climbing ramps and stairs; (2) never climbing ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) occasional overhead reaching with the right upper extremity; (5) frequent use of the hands for handing and fingering; (6) no concentrated exposure to temperature extremes or respiratory irritants; (7) performing simple, routine, and repetitive tasks; (8) occasional superficial contact with coworkers and supervisors (superficial contact is defined as able to receive instructions, ask simple questions, and receive performance appraisals but lacking the ability to engage in more complex social interactions such as persuading others or resolving conflicts); (9) no public contact; (10) no fast-paced production work or strict production quotas; and (11) jobs which involve very little, if any, change in the job duties or the work routine from one to the next."

Step 4: Plaintiff has no past relevant work.

Step 5: Plaintiff can perform a significant number of jobs that exists in the national economy.

(Doc. #5, *PageID* #s 822-36). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since June 1, 2015. *Id.* at 836-37.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #5, *PageID* #s 819-37), Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. Discussion

Plaintiff asserts that the ALJ failed to abide by this Court's prior order and erred in weighing the medical source opinions. (Doc. #s 6, 11). Specifically, Plaintiff argues that the ALJ improperly evaluated the medical opinions from Plaintiff's treating physician, Therese M. Zink, M.D.; the state agency reviewing psychologists, Karla Voyten, Ph.D., and Paul Tangeman, Ph.D.; the consulting examining psychologist, Mary Ann Jones, Ph.D.; and examining psychologist, Ron Koon, Ph.D. (Doc. #6, *PageID* #s 1056-67).

In contrast, the Commissioner maintains that the ALJ reasonably considered and evaluated the medical opinions when formulating Plaintiff's residual functional capacity. (Doc. #10).

### A. Treating Physician's Opinion

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions

of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.[3]

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

[3] On January 18, 2017, the Social Security Administration promulgated "Revisions to Rules Regarding the Evaluation of Medical Evidence," which, among other things, served to eliminate the treating physician rule for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404, 416). Since Plaintiff's applications were filed prior to the effective date of March 27, 2017, the treating physician rule is still applicable to her claims.

On August 26, 2015, Dr. Zink, Plaintiff's treating physician, provided an assessment in which she reported that her practice had treated Plaintiff since July 2014. (Doc. #5, *PageID* #634). Plaintiff's diagnoses at that time included hypothyroidism, vitamin D deficiency, depressive disorder, learning difficulties, insomnia, neuropathy, hypertensive disorder, gastroesophageal reflux disease, abscess of labia, folliculitis, primary fibromyalgia syndrome, pain in both legs, total body pain syndrome, unsteady gait, numbness of foot, and chest pain. *Id.* Dr. Zink opined that Plaintiff is unsteady on her feet and uses a cane or walker. *Id.* Plaintiff uses a shower chair and an electric scooter when shopping. *Id.* Dr. Zink also noted that Plaintiff reads at a first-grade level or below. *Id.*

The ALJ recognized that Dr. Zink is Plaintiff's treating physician and an acceptable medical source. *Id.* at 831. However, he was "compelled to give only minimal weight" to Dr. Zink's opinions concerning Plaintiff's physical impairments. *Id.* The ALJ found that although Dr. Zink indicated that Plaintiff used an ambulatory device, "she did not state that the use of any of these items, including [Plaintiff's] use of a shower chair, is medically necessary consistent with the lack of objective evidence of a medically determinable medical condition which affects [Plaintiff's] lower extremities to such an extent that her ability to stand or walk is significantly compromised." *Id.* The ALJ noted that at one appointment, Plaintiff did not use a walker, and at another, she ambulated without an assistive device—albeit with a "stiff and somewhat hobbled gait." *Id.* at 831-32 (citations omitted). The ALJ also pointed out that on other occasions, Plaintiff presented with normal gait and station. *Id.* at 832 (citations omitted). Further, Romberg testing was negative, her coordination was intact, straight leg raise was negative bilaterally, and she had no abnormalities of the joints, bones, or muscles. *Id.* (citations omitted). The ALJ recognized that

Plaintiff's lower extremity muscle strength was nominally diminished but concluded it "would certainly allow her to stand and walk consistent with light work …." *Id.*

The ALJ also specifically addressed Dr. Zink's opinion that Plaintiff used a shower chair, concluding, "It is difficult to speculate how the use of a shower aide is relevant to [Plaintiff's] ability to work particularly given many of the normal examination and medical investigations discussed [in his decision]." *Id.* at 831. As Plaintiff correctly points out, ALJ Kenyon, in his previous decision also questioned the relevance of her shower chair. *Id.* at 41. United States Magistrate Judge Ovington questioned the ALJ's criticism because the ALJ asked Plaintiff during the first hearing about her ability to take care of her personal needs, including her ability to take a bath. *Betty H. v. Comm'r of Soc. Sec.*, 3:18cv390, Doc. #18, *PageID* #1713 (S.D. Ohio March 10, 2020). Judge Ovington further found that Plaintiff, consistent with Dr. Zink's opinion, testified that she used a shower chair. *Id.* Additionally, she concluded that Plaintiff's use of a shower chair supports Dr. Zink's opinion that Plaintiff uses a cane or walker. *Id.*

Although the ALJ set forth the treating physician rule earlier in his decision when discussing Dr. Zink's opinion regarding Plaintiff's reading skills, the ALJ failed to mention the concept of "controlling weight" when analyzing Dr. Zink's opinions concerning Plaintiff's physical limitations and failed to address the two factors of the treating physician rule. (Doc. #5, *PageID* #70). This failure "hinders a meaningful review of whether the ALJ properly applied the treating physician rule that is at the heart of this regulation." *Gayheart*, 710 F.3d at 377 (citing *Wilson*, 378 F.3d at 544). Indeed, the ALJ only addresses whether the medical evidence of record is consistent with Dr. Zink's opinion. It is unclear whether the ALJ is discussing the second condition of the treating physician rule—whether the opinion is not inconsistent with the other

substantial evidence in the case record—or the consistency factor. If the ALJ is addressing the consistency factor, then the ALJ failed to provide good reasons for not giving Dr. Zink's opinion controlling weight. This failure constitutes error because it "deprives the Court of the opportunity to meaningfully review whether [the ALJ] undertook the 'two-step inquiry' required when analyzing treating source opinions." *Marks v. Colvin*, 201 F. Supp. 3d 870, 882 (S.D. Ohio 2016); *see also Hatton v. Comm'r of Soc. Sec.*, No. 3:18-CV-008, 2018 WL 4766963, at *4 (S.D. Ohio Oct. 3, 2018), *report and recommendation adopted*, No. 3:18-CV-008, 2018 WL 5084758 (S.D. Ohio Oct. 18, 2018); *Reese v. Comm'r of Soc. Sec.,* No. 3:17-CV-283, 2018 WL 2381896, at *3 (S.D. Ohio May 25, 2018).

Moreover, the ALJ's observations illustrate an important known fact about fibromyalgia—a fact that the Sixth Circuit has repeatedly emphasized: Fibromyalgia patients "typically 'manifest normal muscle strength and neurological reactions and have full range of motion.'" *Kalmbach*, 409 F. App'x at 861 (citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1998)) (per curiam). Despite this well-established principle, the ALJ cited Plaintiff's lack of objective medical evidence and normal test results to discredit Dr. Zink's opinions. *See* Doc. #5, *PageID* #s 831-32. This was in error. *See Lucas v. Comm'r of Soc. Sec.*, No. 1:13-cv-483, 2014 U.S. Dist. LEXIS 113126, *23 (S.D. Ohio July 18, 2014) (Litkovitz, M.J.), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 112832, 2014 WL 4065608 (S.D. Ohio Aug. 14, 2014) (Spiegel, D.J.) (Finding error where the ALJ "relied on normal test results and normal physical findings, *i.e.*, normal 'strength, reflexes, gait, and range of motion,' none of which are relevant to the severity of plaintiff's fibromyalgia symptoms."); *see also Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 778 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 245). This

error is not harmless because the emphasis on normal physical examination and testing in assessing her fibromyalgia demonstrates a fundamental misunderstanding of this impairment. *Id.* at *22; *see also Kalmbach*, 409 F. App'x at 861; *Foster v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 709, 715 (S.D. Ohio 2019).

Furthermore, substantial evidence does not support the ALJ's reasons for discounting Dr. Zink's opinion that Plaintiff reads at a first-grade level or below. (Doc. #5, *PageID* #s 823-24). The ALJ "decline[d] to afford controlling weight to Dr. Zink's assessment of [Plaintiff's] literacy capabilities" and, instead, assigned her opinion "only minimal weight." *Id.* at 824. The ALJ noted that she told field office personnel that she can read and understand English and can write more than her name. *Id.* at 823 (citation omitted). Additionally, Plaintiff earned A's in English and B's in classes such as history, economics, biology, and political science. *Id.* (citation omitted). According to the ALJ, "It is only reasonable to conclude [Plaintiff] would not have been able to earn such grades in these courses if she were truly illiterate." *Id.* The ALJ also pointed out that Plaintiff said that she can read some children's book and, although she has to reread passages, she enjoys reading the bible. *Id.* at 824. Further, Plaintiff can text with her friends, read some of her medication bottles, and was presumably able to pass the written portion of a driver's test (given that she presented a Georgia driver's license to the consultative examiner). *Id*. at 824.

Although the ALJ is correct that Plaintiff earned some A's and B's, the ALJ does not recognize that she also earned B's and C's in English and C's and one D in history. *Id.* at 288. Further, her high school record indicates "Special Ed. Cert." *Id*. This is consistent with Plaintiff's report to Mary Ann Jones, Ph.D., that she "was classified as a slow learner and was eligible for special education services, as well as speech and language services." *Id.* at 626. It is also

consistent with Plaintiff's testimony during her first hearing that she was in special education classes, "didn't do well at all" in school, and "can read just a little bit, but not that much." *Id.* at 57-58. Similarly, she testified at her second hearing that she "can't read that good at all." *Id.* at 855. Furthermore, although the ALJ is correct that Plaintiff testified at her second hearing that she tries to read the Bible, she explained that she has to reread the same passage seven, eight, or more times to remember what it says. *Id.* Accordingly, substantial evidence does not support the ALJ's reasons for discounting Dr. Zink's opinion that Plaintiff reads at a first-grade level or below.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[4]

**B. Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

*Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to have this case remanded to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case be terminated on the Court's docket.

July 20, 2022

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).